**FISHER & PHILLIPS LLP**
Corporate Park III
580 Howard Avenue
Somerset, New Jersey 08873
(732) 560-7100
Attorneys for Plaintiff
The Great Atlantic & Pacific Tea Company, Inc.
Attorney of Record: DS4129



RECEIVED
MAY 29 2007
U.S.D.C. S.D. N.Y.
CASHIERS

JUDGE DANIELS

---

|  |  |
|---|---|
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., | UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK |
| Plaintiff, | Civil Action No. **07 CIV 4114** |
| v. | |
| MICHAEL SISIA, | **VERIFIED COMPLAINT** |
| Defendant. | |

Plaintiff The Great Atlantic & Pacific Tea Company, Inc. ("A&P" or the "Company"), having its company headquarters located at 2 Paragon Drive in the Borough of Montvale, County of Bergen, and State of New Jersey, through its undersigned counsel, Fisher & Phillips LLP, by way of its Verified Complaint against the defendant alleges and says:

## RELIEF REQUESTED

1.    A&P seeks, among other things, preliminary and permanent injunctive relief to arrest and avoid the existing, imminent, and irreparable harm caused, and to be caused, by Michael Sisia ("Sisia"), an A&P District Manager, who announced his resignation from A&P and his intention to begin employment on May 29, 2007 in a nearly identical function with A&P's direct competitor, Wakefern Food Corporation / ShopRite ("ShopRite").

1

2.    Sisia's intimate knowledge of A&P's sales and merchandising techniques and strategies will improperly, unfairly, and inevitably cause A&P irreparable harm and significant financial loss.

3.    As a District Manager, Sisia elected to participate in A&P's Long Term Incentive Program and Restricted Share Unit Award Agreement, which granted Sisia restricted share units that, pursuant to a formula, would convert to Company stock. In consideration therefor, Sisia understood and agreed in writing that, among other things, for a period of twelve (12) months following his separation from A&P, he would not directly or indirectly perform work or services for entities competing with A&P within a limited geographic area that was similar to the work that he performed during the last twelve months of his employment with A&P.

4.    In accordance with *Fed.R.Civ.P.* 65, A&P now seeks temporary restraints and injunctive relief from the District Court in order to enforce the Agreement signed by Sisia, to enjoin him from working for ShopRite in a competitive capacity for the complete duration of his twelve-month non-compete period, and from violating the Agreement.

**THE PARTIES**

5.    A&P is a leading retailer of food and general merchandise, operating stores under eight retail banners, including the conventional supermarket known by the same name, A&P. It is a Maryland corporation with its principal place of business located at 2 Paragon Drive in Montvale, New Jersey. It has been in business for 147 years.

6.    Sisia is a District Manager with A&P. Until his voluntary resignation on May 24, 2007, Sisia has been employed by the Company since 1998. Upon information and belief, he currently resides at 1208 Pondview Loop, Wappingers Falls, New York 12590.

2

## JURISDICTION AND VENUE

7.      The United States District Court for the Southern District of New York has original jurisdiction over this application in accordance with 28 *U.S.C.* §1332, because the matter in controversy exceeds the value of $75,000 and is between citizens of different States.

8.      Venue is proper in this Court pursuant to 28 *U.S.C.* §1391 because defendant Sisia is a resident of New York and/or a substantial part of the events and/or omissions giving rise to A&P's claims for relief arise in New York.

## FACTUAL BACKGROUND AS TO ALL COUNTS

### Sisia's Employment With A&P

9.      In March 2002, Sisia was promoted to the position of District Manager, a position in which he earned, immediately prior to his resignation, total cash compensation of $137,812.00.

10.     As a District Manager, Sisia was responsible for planning and directing the operations of 14 stores in northern New Jersey.  Prior to having responsibility for this district, Sisia was responsible for planning and directing the operations of 15 stores in Putnam, Westchester and Dutchess counties in New York from September 2005 through September 2006. Sisia was responsible for maximizing sales and profits, productivity, inventory, and customer satisfaction in his District.

11.     Among his numerous duties and responsibilities as an A&P District Manager, Sisia set the direction for his District's performance, playing a central role in the planning and development of operating budgets and business plans that included, among other things, the sale and merchandising of groceries, for each store within his geographic district.

3

12.    In his trusted management position, Sisia analyzed highly confidential profit and loss statements and other financial reports; established individual store goals for sales volume and profit, margins, labor and other expenses; identified operational issues and collaborated on action plans to improve operating conditions and performance outcomes; and provided key leadership and direction to his subordinates.

13.    At A&P, Sisia operated with minimal supervision, exercised independent discretion, and was intimately involved in the business operations of A&P at various levels.

14.    Sisia had intimate knowledge of A&P's customer base. He had total access to, and a complete understanding of, A&P's marketing strategies: how it attracts consumers and how best to market and sell to those consumers.

15.    Sisia also had access to, and knowledge of, A&P's related trade secrets and confidential competitive information, including A&P sales projections and strategies; merchandising plans; customer buying habits; business development plans; budgeting plans; and other proprietary and confidential information. Sisia acquired all of this highly confidential information in the course of his employment with A&P as a senior manager and as part of the duties and responsibilities entrusted to him by A&P.

16.    A&P has invested substantial time, funds and effort in marketing and selling to its customers; creating innovative sales, pricing, and financial strategies; and carefully identifying, hiring, training, and employing key District Managers, like Sisia.

17.    A&P's strategies and information are confidential and proprietary to A&P and not readily available to others in the industry. A&P maintains the aforementioned in a confidential and secure manner.

18.    All of the aforementioned is critical to A&P's ability to maintain and enhance its competitive business advantage in the marketplace and its reputation as a leader in the highly competitive retail grocery industry. A&P maintains a legitimate business interest in protecting its economic advantage from harm through improper, unauthorized, and unfair competition.

**Sisia's Non-Compete with A&P**

19.    In 2006, Sisia was invited to participate in the Company's Long Term Incentive Program (the "Program") whereby he would be granted Restricted Share Units of the Company, provided that he accepted the terms and conditions of a Restricted Share Unit Award Agreement ("Agreement"). A true copy of the Agreement is attached hereto as Exhibit A.

20.    The Agreement contains the following restriction:

> [Y]ou agree that . . . for a period of twelve (12) months following termination of your employment for whatever reason, except if you are terminated by the Company without cause, you will not, directly or indirectly, perform any work or services for any Competing Enterprise that is similar to or competitive with the work that you performed for the Company during the last twelve (12) months of your employment with the Company. Competing Enterprise shall mean any entity (i) that operates retail grocery stores selling food or food and general merchandise and (ii) that has a store within 15 miles of any one of the Company's stores. . . .

Ex. A at 2-3, ¶ 5.

21.    Under Paragraph 6 of the Agreement, which is entitled "Trade Secrets and Proprietary Information," Sisia acknowledged that he possessed A&P's confidential information and agreed not to disclose it:

> You hereby acknowledge that you have and/or will have access to and become acquainted with various trade secrets and proprietary information of the Company and other confidential information relating to the Company. You covenant that you will not, directly or indirectly, disclose or use such information except (i) as is necessary and appropriate in connection with your employment by the Company, (ii) as is required pursuant to a judicial or administrative subpoena, or (iii) if such information is already in the public domain (other than by reason of your

5

breach of your obligations hereunder). Subject to the exceptions set forth above, you agree that you will adhere in all respects to the Company's policies against the use or disclosure of such information.

Id. at 3, ¶ 6.

22.     Under Paragraph 8 of the Agreement which is entitled "Arbitration; Injunctive Relief," Sisia acknowledged that A&P would be irreparably harmed by his breach or threatened breach of the Agreement and authorized A&P to apply to a court to seek preliminary or permanent injunctive relief:

> You acknowledge and agree that a breach of your obligations under Sections 4, 5, 6 and/or 7 of this Agreement could cause irreparable harm for which the Company would have no adequate remedy at law, and further agree that, notwithstanding the agreement to arbitrate controversies or claims as set forth above, the Company may apply to a court of competent jurisdiction to seek to enjoin preliminarily or permanently any breach or threatened breach of your obligations under Sections 4, 5, 6 and/or 7 of this Agreement.

Id. at 3-4, ¶ 8.

23.     After being given 21 days to review and consider the Program and Agreement, Sisia decided to participate in the Program and executed the Agreement on June 24, 2006. Id. at 4-5.

**Sisia Announces His Resignation from A&P and Intent to Commence Employment with A&P's Competitor,**

24.     On May 24, 2007, Sisia informed his superiors in New Jersey that he had been offered, and had accepted, a position as a District Manager at ShopRite.   See Affidavit of Chuck McCutchan annexed hereto as Exhibit B.

25.     During his exit interview on Friday, May 25, 2007, Sisia stated that he would begin working at ShopRite on Tuesday, May 29, 2007.

26.     ShopRite is a direct competitor of A&P in the sale of food and general merchandise.   ShopRite operates 190 stores in New Jersey, New York, Connecticut,

6

Pennsylvania and Delaware. A&P operates 320 stores in New Jersey, New York, Connecticut, Pennsylvania, Delaware, Maryland and the District of Columbia. A number of ShopRite's stores are located within 15 miles of A&P's stores.

### Sisia's Breach Of His Non-Compete Agreement

27.     At the time of his May 24, 2007 resignation announcement, Sisia explained that in his new position as a District Manager with ShopRite, he will have responsibilities related to the operations of 6 ShopRite stores in Dutchess and Orange Counties, NY – responsibilities substantially similar to those he performed for A&P.

28.     By letter dated and hand-delivered May 25, 2007, A&P's counsel reminded Sisia that he is bound by continuing contractual and legal obligations to A&P including, among other things, his duty pursuant to the Agreement to refrain for twelve months from performing duties for A&P competitors similar to those duties he performed for A&P during the last twelve months. A true copy of this letter is annexed hereto as Exhibit C.

29.     Upon information and belief, Sisia still intends to begin employment with ShopRite in a capacity that will violate his non-compete agreement with A&P despite his receipt of this letter.

30.     By letter dated (and sent by facsimile on) May 24, 2007, A&P's counsel notified ShopRite in writing of Sisia's post-separation obligations to A&P and that A&P expected Sisia and ShopRite to honor those obligations. A true copy of this letter is annexed hereto as Exhibit D.

### FIRST COUNT
### (Breach Of Contract)

31.     A&P repeats and realleges each of the allegations heretofore pled.

7

32.     The Agreement between Sisia and A&P is an enforceable contract between the parties.

33.     The Agreement between Sisia and A&P imposes minimal post-separation obligations upon Sisia which are reasonable and necessary to protect A&P's legitimate business interests; imposes no undue hardship on Sisia as he is permitted to work for A&P competitors (including ShopRite) in capacities that are not similar to or competitive with the work he performed for A&P during the last 12 months of his employment; and is not injurious to the public.

34.     The scale of A&P's business operations, and Sisia's understanding and voluntary agreement to the post-employment restriction, demonstrate that the Agreement's territorial limitation is inherently reasonable.

35.     The brevity of the twelve-month duration of the Agreement further indicates that the Agreement is inherently reasonable.

36.     Sisia's proposed action will constitute a material breach of his Agreement with A&P.

37.     As a direct and proximate result of Sisia's proposed breach of contract, Sisia will cause A&P to suffer irreparable injury and financial harm if not immediately restrained.

38.     A&P, therefore, is entitled to a temporary restraining order and injunction prohibiting Sisia's breach of his Agreement; and judgment against Sisia for compensatory damages; interest; costs of suit; attorney's fees to the extent permitted by law; and such other and further relief as the Court deems fair, just, and equitable.

## SECOND COUNT
### (Breach Of The Covenant Of Good Faith And Fair Dealing)

39.     A&P repeats and realleges each of the allegations heretofore pled.

8

40.    Implied in the written contractual relationship between Sisia and A&P was a covenant of good faith and fair dealing.

41.    Notwithstanding the reasonable and unambiguous restrictions of Sisia's Agreement with A&P, Sisia knowingly, willfully, and wantonly intends to breach his Agreement with A&P by accepting employment with ShopRite, which action is wrongful, without justification, and violative of Sisia's covenant of good faith and fair dealing owed to A&P.

42.    As a direct and proximate result of Sisia's actions, Sisia will cause A&P to suffer irreparable injury and financial harm if not immediately restrained.

43.    A&P, therefore, is entitled to a temporary restraining order and injunction prohibiting Sisia's breach of his Agreement; and to judgment against Sisia for compensatory damages; interest; costs of suit; attorney's fees to the extent permitted by law; and such other and further relief as the Court deems fair, just, and equitable.

**WHEREFORE**, A&P demands injunctive relief and temporary restraints against Sisia and respectfully requests that the District Court:

1.    Enter a temporary restraining order and/or preliminary injunction against Sisia immediately enjoining him from working at Wakefern Food Corporation/ShopRite or at any other competitor of A&P as a District Manager or in a capacity having responsibilities substantially similar to those he had during the last year of his employment with A&P, until May 24, 2008;

2.    Enter a temporary restraining order and/or preliminary injunction against Sisia immediately enjoining him from: violating any other material term or condition of his Agreement with A&P; disclosing or using A&P's confidential and proprietary information and

trade secrets in any manner; and otherwise breaching his continuing duties of good faith and fair dealing owed to A&P;

3.    Enter an Order directing Sisia to provide a copy of all e-mails, letters, correspondence, and communications in any form or format concerning the manner, means, and method in which Sisia was solicited and hired by Wakefern Food Corporation/ShopRite; and

4.    Enter an Order requiring Sisia to immediately return to A&P all A&P property in his possession including, but not limited to, the original and all copies of all files, information, and/or documentation concerning A&P's sales, budgets, margins, pricing, merchandising and/or business strategy.

**AND FURTHER, WHEREFORE**, A&P respectfully requests that the Court:

1.    Grant A&P final judgment against Sisia for all actual, compensatory, and punitive damages, as well as other damages to be determined at trial, together with pre-judgment and post-judgment interest.

2.    Grant A&P final judgment against Sisia for all allowable costs, attorneys' fees, and other litigation expenses to the extent recoverable under his Agreement and applicable law.

3.    Grant A&P such other and further relief that the Court deems may be just, equitable, and proper.

Dated: May 25, 2007

> **FISHER & PHILLIPS LLP**
> Attorneys for Plaintiff
> The Great Atlantic & Pacific Tea
> Company, Inc.
>
> By_____
>     DAVID E. STRAND/DS4129
>     For the Firm

10

## VERIFICATION

Sheryl R. Martin certifies as follows:

1.      I am the Senior Counsel and Vice President of Employment Law of The Great

Atlantic & Pacific Tea Company, Inc. ("A&P") and duly authorized to sign this verification,

2.      I have read the Complaint to which this Verification is attached.  The facts set

forth in the Complaint are true based upon my personal knowledge or review of business records

maintained by A&P in the regular course of its business except where stated to be upon

information and belief.  As to the latter facts, I have received information which leads me to

believe they are true.

3.      Pursuant to 28 U.S.C. §1746, I certify under penalty of perjury that the foregoing

is true and correct.

The Great Atlantic & Pacific Tea Company, Inc.

*Sheryl R. Martin*

Dated: May 25, 2007

11

# *EXHIBIT A*

Date:   May 24, 2006

Dear:   Michael Sisia

**Reference:  2006 Long Term Incentive Program ("Program")**
**Restricted Share Unit Award Agreement ("Agreement")**

This will confirm the terms and conditions of an Award being made to you pursuant to The Great Atlantic & Pacific Tea Company, Inc. (the "Company") **1998 Long Term Incentive and Share Award Plan** (the "Plan"), a copy of which is attached hereto and made a part of this Agreement.

1.      **Restricted Share Units**.  Provided that you have signed and returned this Agreement indicating your acceptance of its terms and conditions, the Company will grant 568 Restricted Share Units ("Units") to you, subject to all of the terms contained in this Agreement.  The Units are intended to be Performance Awards within the meaning of the Plan.

2.      **Shareholder Approval**.  The grant of these Units is contingent upon the Shareholders' approval of amendments to the Plan at the July 2006 Annual Meeting of Shareholders, and is subject to the performance criteria outlined below.

3.      **Performance Criteria and Vesting Requirements**.

(a)      The performance period is February 26, 2006 to February 28, 2009.  The performance criteria are (1) Operating Income, as hereinafter defined, and (2) Return on Invested Capital, as hereinafter defined, for Fiscal Year 2008.  The performance criteria are equally weighted at 50%.  The target for Operating Income is $43 million and the maximum is $74 million.  The target for Return on Invested Capital is 14.1% and the maximum is 15.8%.  For purposes of this grant, Operating Income is defined as Income from continuing operations adjusted for certain items including disposals, restructuring, refinancing, accounting changes, projects approved by the Board, and other similar items.  For purposes of this grant, Return on Invested Capital is defined as EBITDA (earnings before interest, tax, depreciation and amortization) divided by the sum of Assets (excluding cash), minus Current Liabilities.

(b)      The number of Units that are ultimately earned and vested shall be the following percentage of the number of Units granted in Paragraph 1 above that are subject to the applicable performance criteria: 100% for performance at target, 200% for performance at maximum.  The number of Units ultimately earned and vested shall be interpolated to account for performance that falls between target and maximum.  No Units shall be earned if performance with respect to either one of the criteria is below target.  The maximum number of Units subject to an applicable performance criteria that may be earned and vested is 200% of the number of Units granted in Paragraph 1 above that are subject to the applicable performance criteria, even if the maximum level of performance with respect to that performance criteria is exceeded.  Fractional Units shall be rounded down to the nearest Unit.

(c)    Each vested Unit will be converted to one share of the Company's Common Stock. Such vested Units will be delivered to you in the form of a stock certificate in or around late May 2009; provided, however, that you must be an employee of the Company, or a parent or subsidiary of the Company, at all times during the period beginning with the date hereof and ending on the date the vested Units are delivered to you in the form of a stock certificate.

(d)    The Units are subject to the terms, conditions, limitations and restrictions contained in this Agreement and the Plan and may not be assigned or transferred, in whole or in part, except as therein provided.

(e)    In the event that your employment is terminated for any reason by you or by the Company or a parent or subsidiary of the Company, you shall forfeit the Units immediately upon such termination of employment.

4.    **Release of Claims**.  In exchange for the opportunity to participate in the Program, you discharge and release all claims, obligations, and demands which you have, ever had, or in the future may have against the Company, any of its parents, subsidiaries or affiliated entities, and any of its or their officers, directors, employees, agents, predecessors or successors (the "Releasees") arising out of or related to your employment with the Company and/or Releasees up to the date of this Agreement, including, but not limited to, any and all claims for breach of contract or implied contract, constructive or wrongful discharge, or for negligence, retaliation and all torts; any and all claims for attorney fees; any and all claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act ("ADEA"), the Older Workers Benefit Protection Act ("OWBPA"), the Americans with Disabilities Act, the Employment Retirement Income Security Act of 1974, the Family and Medical Leave Act, the Equal Pay Act, the Worker Adjustment and Retraining Notification Act, the National Labor Relations Act, the Fair Labor Standards Act, and the Sarbanes-Oxley Act of 2002; any and all claims under each and every state or local variation of these federal laws including without limitation the New Jersey Law Against Discrimination, the New Jersey Family Leave Act, the New Jersey Conscientious Employee Protection Act and the New Jersey Civil Rights Act; and any and all claims under any and all other applicable federal, state, and/or local fair employment practices laws, individual or constitutional rights, and wage or discrimination laws.   The foregoing release shall not affect any acts giving rise to claims subsequent to the execution of this Agreement. Excluded from this release are any claims which by law cannot be waived; provided, however, while you cannot waive your right to file a charge with or participate in an investigation conducted by certain government agencies, you are waiving and releasing your claim or right to any monetary recovery should any party (such as the Equal Employment Opportunity Commission) pursue any claims on your behalf.

5.    **Non-Competition**.  In exchange for the opportunity to participate in the Program, you agree that during the term of your employment with the Company, and for a period of twelve (12) months following termination of your employment for whatever reason, except if you are terminated by the Company without cause, you will not, directly or indirectly, perform any work or services for any Competing Enterprise that is similar to or competitive with the work

2

that you performed for the Company during the last twelve (12) months of your employment with the Company. Competing Enterprise shall mean any entity (i) that operates retail grocery stores selling food or food and general merchandise and (ii) that has a store within 15 miles of any one of the Company's stores. For the same twelve-month period, you also agree to not contact or solicit employees of the Company for the purpose of inducing such employees to leave the employ of the Company. If any aspect of this paragraph shall be determined under applicable law to be overly broad in duration, geographical coverage, substantive scope, or otherwise, it shall be deemed narrowed to the broadest term permitted by applicable law and shall be enforced as so narrowed.

6.      **Trade Secrets and Proprietary Information**. You hereby acknowledge that you have and/or will have access to and become acquainted with various trade secrets and proprietary information of the Company and other confidential information relating to the Company. You covenant that you will not, directly or indirectly, disclose or use such information except (i) as is necessary and appropriate in connection with your employment by the Company, (ii) as is required pursuant to a judicial or administrative subpoena, or (iii) if such information is already in the public domain (other than by reason of your breach of your obligations hereunder). Subject to the exceptions set forth above, you agree that you will adhere in all respects to the Company's policies against the use or disclosure of such information.

7.      **Confidentiality**. You further agree that your participation in the Program, and the terms and conditions of this Agreement, are confidential and that you will not in any manner publish, publicize, disclose or otherwise make known or permit or cause to be made known to any third person your participation in the Program or the terms and conditions of this Agreement. Nothing in this paragraph shall be construed to prohibit the disclosure of this Agreement to your spouse or any legal, tax or financial consultant retained by you, provided that the persons to whom the disclosure is being made agree to be bound by the confidentiality provisions of this paragraph.

8..     **Arbitration; Injunctive Relief**. Any controversy or claim arising out of or relating to this Agreement, directly or indirectly, or the performance or breach thereof, will be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. The arbitration will be held in Bergen County in New Jersey, or such other place as may be agreed upon at the time by the parties to the arbitration. The parties shall bear their own expenses in connection with any arbitration or proceeding arising out of or relating to this Agreement, directly or indirectly, or the performance or breach thereof; provided, however, that in the event that you substantially prevail, the Company agrees promptly to reimburse you for all expenses (including costs and fees of witnesses, evidence and attorneys fees and expenses) reasonably incurred by you in investigating, prosecuting, defending, or preparing to prosecute or defend any action, proceeding or claim arising out of or relating to this Agreement, directly or indirectly, or performance or breach thereof. You acknowledge and agree that a breach of your obligations under Sections 4, 5, 6 and/or 7 of this Agreement could cause irreparable harm for which the Company would have no adequate remedy at law, and further agree that, notwithstanding the agreement to arbitrate controversies

or claims as set forth above, the Company may apply to a court of competent jurisdiction to seek to enjoin preliminarily or permanently any breach or threatened breach of your obligations under Sections 4, 5, 6 and/or 7 of this Agreement.

9.    **General.**

(a)  Each share of stock awarded hereunder, once vested, shall be fully paid and non-assessable.

(b)  You shall not have any rights of a record holder with respect to such shares until such certificates are actually issued to you.

(c)  You shall assume all risks incident to any change hereafter in the applicable laws or regulations or incident to any change in the market value of any shares issued to you upon the vesting of the Units in whole or in part.

(d)  Nothing herein contained shall obligate the Company, or any parent, division, affiliate or subsidiary of the Company, to continue your employment for any particular period or on any particular basis of compensation.

(e)  The validity, interpretation and performance of this Agreement will be governed by the laws of the State of New Jersey without regard to the conflict of law provisions.

10.    **Duty to Report Unethical and Unlawful Conduct.**  By signing this Agreement below, you are acknowledging and agreeing that:

(a)  it is your duty and responsibility to report any conduct that you believe is unethical, improper, unlawful, or in violation of our Code of Business Conduct and Ethics, especially any such behavior involving accounting practices, internal accounting controls or fraud, and

(b)  that any such conduct must be reported to the Legal Compliance Officer at (201) 571-4401 or the Chief Internal Auditor at (201) 571-4148 or to The Network Hotline at 1-888-277-3258, and

(c)  that as of the date you sign this Agreement you are not aware of any conduct that you believe is unethical, improper, unlawful, or in violation of our Code of Business Conduct and Ethics.

11.    **Your Acceptance and Return of Agreement.**  You may consult with an attorney prior to signing this Agreement and you have at least twenty-one (21) days during which to review and consider the provisions of this Agreement before signing, although you may sign and return it sooner if you so desire.  Your signed Agreement must be returned to Sheryl Martin, A&P, Human Resources, 2 Paragon Drive, Montvale, NJ 07645.  You have the right to revoke this Agreement for a period of seven (7) days after signing it and this Agreement shall not become effective until such seven-day revocation period has expired.  You

4

acknowledge and agree that if you wish to revoke this Agreement, you must do so in writing to Sheryl Martin, A&P, Human Resources, 2 Paragon Drive, Montvale, NJ 07645, and that such revocation must be signed by you and postmarked, or received by A&P, no later than the seventh day after the date on which you signed this Agreement. You acknowledge and agree that, in the event that you revoke this Agreement, you shall have no right to receive the Units described above.

Very truly yours,

By: _____

**ALLAN RICHARDS**
Senior Vice President, Human Resources, Labor
Relations and Legal Services

Agreed and accepted:

By: _____
                    Signature

Print Name: _MICHAEL  SISIA_

Date: _6/24/06_

5

*EXHIBIT B*

**FISHER & PHILLIPS LLP**
Corporate Park III
580 Howard Avenue
Somerset, New Jersey 08873
(732) 560-7100
Attorney for Plaintiff
The Great Atlantic & Pacific Tea Company, Inc.
Attorney of Record: DS4129

| | |
|---|---|
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., | **UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK** |
| Plaintiff, | |
| v. | Civil Action No. |
| MICHAEL SISIA and JOHN DOES 1-20 (fictiously named), individually and severally, | |
| Defendants. | |

## AFFIDAVIT OF CHUCK McCUTCHAN

I, **CHUCK McCUTCHAN**, swear and affirm under oath as follows:

1.     I am the Regional Vice President of Operations, North Region, for

plaintiff The Great Atlantic & Pacific Tea Company, Inc. ("A&P"), and in such capacity

have personal knowledge of, and am competent to attest to, the matters within this

Affidavit in support of A&P's application for an Order to Show Cause with Temporary

Restraints.

1

2.      On May 24, 2007, defendant Michael Sisia ("Sisia") submitted a letter to me stating that he will be leaving his position as District Manager with A&P effective June 8, 2007.  A copy of this letter is attached hereto as Exhibit A.

3.      On May 24, 2007, Sisia verbally informed me that he accepted a position as a District Manager with ShopRite, that he would immediately have responsibility for the operations of six (6) ShopRite stores in Dutchess and Orange Counties in New York, and that in the future he would have responsibility for additional ShopRite stores.

4.      I informed Sisia that his employment at ShopRite would violate his agreement not to compete with A&P for 12 months after his employment, and that A&P intended to enforce the agreement.

5.      Sisia reaffirmed that he intended to become a District Manager at ShopRite.

6.      Under the circumstances, I informed Sisia that I accepted his resignation effective May 24, 2007.

7.      ShopRite has approximately 190 stores in New Jersey, New York, Connecticut, Pennsylvania and Delaware and is A&P's largest competitor.

8.      Sisia has held the position of District Manager with A&P since March 2002 and has had responsibility for stores in New Jersey and New York, including stores in Putnam, Dutchess and Westchester counties in New York from September 2005 through September 2006.

9.      Mario Giornio, a produce specialist who reported to defendant Sisia immediately prior to Sisia's resignation, also has informed me that he is resigning from

A&P to accept a position at ShopRite where he will have responsibilities for stores
located in Westchester and Putnam counties in New York.

I hereby swear and affirm that the foregoing statements have been made by me
under oath and are true and accurate.  I understand that the foregoing statements made by
me are true.  I am aware that if any of the foregoing statements made by me are willfully
false, I am subject to all appropriate penalties and punishment.

By: _Chuck McCutchan_____
CHUCK McCUTCHAN

STATE OF _NJ_        )
                     ) ss:
COUNTY OF _Bergen_   )

The foregoing Affidavit was acknowledged before me this _25th_ day of

_may_, 2007 by CHUCK McCUTCHAN, known to me to be the person whose

name is signed above or who produced a _____ as identification.

_Cheryl B. Martin_____
~~NOTARY PUBLIC~~

{seal}

_attorney at law, State of NJ_
~~Printed Name of Notary~~ Public
~~Commission Expires:~~

# EXHIBIT A

May 24, 2007

Dear Chuck,

 The purpose of this resignation letter is to inform you that I will be leaving my position as District Manager with A&P effective June 8, 2007.

 I would like to thank you for the opportunities for professional and personal development that you have provided me over the last 9 years, but I feel it is time for a change.

 On a personal level, I would like to thank you, Chuck, for being supportive and complimentary throughout our tenure together.  As I have said to you before, comments from you mean even more to me because of the respect I have for you.

 If I can be of any help during this transition, please let me know.

Sincerely,

Michael Sisia

# *EXHIBIT C*


fresh thinking since 1859

Sheryl R. Martin, Esq.
A&P, VP, Senior Counsel
201-571-4028 – Direct
201-571-8106 – Fax
martins@aptea.com

May 25, 2007

**VIA HAND DELIVERY**
Mr. Mike Sisia
1208 Pondview Loop
Wappingers Falls, NY 12590

Dear Mr. Sisia:

As you know, in 2006, you were selected to participate in the Company's Long Term Incentive Program ("Program"). You were given 21 days to review and consider the terms and conditions of this Program, and you chose to participate. Thus, on June 24, 2006, you executed and entered into a Restricted Share Unit Award Agreement ("Agreement") between you and the Company. This Agreement contains a non-competition clause which reads, in relevant part, as follows:

" … you agree that …. for a period of twelve (12) months following termination of your employment for whatever reason, except if you are terminated by the Company without cause, you will not, directly or indirectly, perform any work or services for any Competing Enterprise that is similar to or competitive with the work that you performed for the Company during the last twelve (12) months of your employment with the Company. Competing Enterprise shall mean any entity (i) that operates retail grocery stores selling food or food and general merchandise and (ii) that has a store within 15 miles of any one of the Company's stores…."

Yesterday, you informed the Company of your resignation and your intention to become employed at ShopRite, where you will have responsibilities substantially similar (if not identical) to those you had with the Company during your last 12 months of employment. Based on the provision cited above, and combined with the fact that you have detailed knowledge of the Company's strategic plan and many types of confidential information and data, your plans to work at ShopRite, a direct competitor of the Company, are in violation of the Agreement. If you proceed to work for ShopRite as a District Manager, or in any other position that is similar to or competitive with the work you performed for the Company during the last 12 months of your employment, the Company will take the legal steps that are necessary to enforce the non-competition provision of the Agreement.

the great atlantic &
pacific tea co., inc,
2 paragon drive
montvale, nj 07645
201.573.9700
www.aptea.com

# *EXHIBIT D*



fresh thinking since 1859

**Sheryl R. Martin, Esq.**
**A&P, VP, Senior Counsel**
**201-571-4028 – Direct**
**201-571-8106 – Fax**
**martins@aptea.com**

May 24, 2007

**VIA FACSIMILE (908) 527-3397**
**AND REGULAR MAIL**

Wakefern Food Corp. / ShopRite
600 York Street
Elizabeth, NJ 07207

**Attn: Legal Department**

To Whom It May Concern:

I am writing in regard to Mike Sisia, a former employee of The Great Atlantic & Pacific Tea Company, Inc. ("A&P"). Mr. Sisia recently informed A&P that he was resigning from A&P and would become employed at ShopRite in a capacity having responsibilities substantially similar (if not identical) to those he had at A&P.

Given the foregoing, I wanted to make certain that ShopRite was aware of Mr. Sisia's Restricted Share Unit Award Agreement ("Agreement") with A&P, which contains a non-competition clause that provides, in relevant part, as follows:

" … you agree that …. for a period of twelve (12) months following termination of your employment for whatever reason, except if you are terminated by the Company without cause, you will not, directly or indirectly, perform any work or services for any Competing Enterprise that is similar to or competitive with the work that you performed for the Company during the last twelve (12) months of your employment with the Company. Competing Enterprise shall mean any entity (i) that operates retail grocery stores selling food or food and general merchandise and (ii) that has a store within 15 miles of any one of the Company's stores…."

Thus, if Mr. Sisia commences employment at ShopRite as a District Manager, or in any other position that is similar to or competitive with the work he performed during the last 12 months of his employment with A&P, then he and ShopRite will be in violation of the Agreement. As I'm sure you suspect from this letter, A&P intends to enforce the Agreement and to pursue all appropriate remedies if it is violated.

the great atlantic &
pacific tea co., inc,
2 paragon drive
montvale, nj 07645
201.573.9700
www.aptea.com

Although we are unsure if Mr. Sisia has or will place ShopRite on notice of this Agreement, I thought it would be prudent to make certain that ShopRite is aware of it, particularly given that Mr. Sisia's start date with ShopRite is presumably near and my assumption is that ShopRite, like A&P, would prefer to avoid litigation if it is at all possible.

I am happy to discuss this matter with you or any other appropriate ShopRite representative. I may be reached at (201) 571-4028.

Unless I hear from ShopRite or Mr. Sisia on May 25, 2007 and am informed that Mr. Sisia will not work at ShopRite at any time during the next 12 months, I will have no choice but to protect the A&P's interests and proceed with filing the necessary court papers.

Sincerely,

*Sheryl R. Martin*

SHERYL R. MARTIN
Senior Counsel, Vice President of
Employment Law



fresh thinking since 1859

Sheryl R. Martin, Esq.
A&P, VP, Senior Counsel
201-571-4028 – Direct
201-571-8106 – Fax
martins@aptea.com

May 24, 2007

**VIA FACSIMILE (908) 527-3397**
**AND REGULAR MAIL**

Wakefern Food Corp. / ShopRite
600 York Street
Elizabeth, NJ 07207

**Attn: Human Resources**

To Whom It May Concern:

I am writing in regard to Mike Sisia, a former employee of The Great Atlantic & Pacific Tea Company, Inc. ("A&P"). Mr. Sisia recently informed A&P that he was resigning from A&P and would become employed at ShopRite in a capacity having responsibilities substantially similar (if not identical) to those he had at A&P.

Given the foregoing, I wanted to make certain that ShopRite was aware of Mr. Sisia's Restricted Share Unit Award Agreement ("Agreement") with A&P, which contains a non-competition clause that provides, in relevant part, as follows:

" … you agree that …. for a period of twelve (12) months following termination of your employment for whatever reason, except if you are terminated by the Company without cause, you will not, directly or indirectly, perform any work or services for any Competing Enterprise that is similar to or competitive with the work that you performed for the Company during the last twelve (12) months of your employment with the Company. Competing Enterprise shall mean any entity (i) that operates retail grocery stores selling food or food and general merchandise and (ii) that has a store within 15 miles of any one of the Company's stores…."

Thus, if Mr. Sisia commences employment at ShopRite as a District Manager, or in any other position that is similar to or competitive with the work he performed during the last 12 months of his employment with A&P, then he and ShopRite will be in violation of the Agreement. As I'm sure you suspect from this letter, A&P intends to enforce the Agreement and to pursue all appropriate remedies if it is violated.

the great atlantic &
pacific tea co., inc,
2 paragon drive
montvale, nj 07645
201.573.9700
www.aptea.com

Although we are unsure if Mr. Sisia has or will place ShopRite on notice of this Agreement, I thought it would be prudent to make certain that ShopRite is aware of it, particularly given that Mr. Sisia's start date with ShopRite is presumably near and my assumption is that ShopRite, like A&P, would prefer to avoid litigation if it is at all possible.

I am happy to discuss this matter with you or any other appropriate ShopRite representative. I may be reached at (201) 571-4028.

Unless I hear from ShopRite or Mr. Sisia on May 25, 2007 and am informed that Mr. Sisia will not work at ShopRite at any time during the next 12 months, I will have no choice but to protect the A&P's interests and proceed with filing the necessary court papers.

Sincerely,

SHERYL R. MARTIN
Senior Counsel, Vice President of
Employment Law